Fred B. STIEG, Plaintiff,

v.

COMMISSIONER OF PATENTS,
Defendant (two cases).

Civ. A. Nos. 2533-63, 2534-63.

United States District Court
District of Columbia.

Feb. 8, 1965.

————•————

Fred L. Witherspoon, Jr., Washington, D. C., John A. Mitchell, Curtis, Morris & Safford, New York City, for plaintiff.

Clarence W. Moore, Sol., U. S. Patent Office, Washington, D. C., for defendant.

JACKSON, District Judge.

These civil actions were brought pursuant to 35 U.S.C. § 145 seeking judgment of this Court authorizing the defendant, Commissioner of Patents, to grant Letters Patent of the United States on two patent applications by the plaintiff. The first application, Serial No. 739,420, was filed June 2, 1958, and relates to a cellulose sponge. The second application, Serial No. 803,848, was filed April 3, 1959, and relates to a method of making cellulose sponges. The actions have been consolidated for trial.

Application Serial No. 739,420 (hereinafter designated '420), contains claims 1, 5 and 10 through 13, of which claim No. 1 is representative and reads as follows:

"A sponge comprised of regenerated cellulose free of comminuted cellulose, said sponge having a multiplicity of fine pores to the extent of at least 500,000 pores per cubic inch."

Application Serial No. 803,848 (hereinafter designated '848), contains claims 2, 3, 4, 6, 8, 12 and 13, of which claim No. 12 is representative and reads as follows:

"The method of forming a sponge having a multiplicity of fine pores to the extent of at least 500,000 pores per cubic inch, said method comprising preparing a paste including a viscose solution and powder fine crystals of an alkali metal salt subjecting the paste thus formed to two separate heat applications, the first comprising an initial elevated temperature in the range of from about 55°C. to 75°C. to effect partial regeneration of the cellulose of the viscose solution whereby a substantially immobile and homogeneous gel-like mass including the fine crystals of salt is formed and the second heat application comprising thereafter subjecting this gel-like mass to a subsequent temperature at least 10°C. higher than the first applied heat and in excess of 75°C. to accomplish the complete regeneration of the cellulose of the viscose solution to form the sponge."

The claims in both applications were rejected by the Patent Office on the ground that the differences between the subject matter they contained and the prior art would have been obvious at the

time the invention was made to a person ordinarily skilled in the art to which the subject matter pertained. 35 U.S.C. § 103. The prior art relied upon was a United States patent to Speijer, No. 2,105,380 (1938).

The patent discloses a process for making sponges by mixing unripened xanthated viscose with carbon disulfide and an appropriate number of salt crystals in a mold, and regenerating the mixture in a heating chamber at 100°C for 3 to 15 hours. It is stated that fine pores will be produced if the crystals are of a size that will pass a 20 mesh screen but be retained on a 50 mesh screen, and that larger pores will be produced if the crystals have larger diameters.

According to the testimony at trial, the general commercial practice for making cellulose sponges is as follows:

The general commercial practice is to start with cellulose. The cellulose is steeped in caustic soda, sodium hydroxide, and is then pressed to remove excess liquid. The steeped sheets are then broken up into crumb form and this crumb is then treated with carbon disulfide to form cellulose xanthate. The xanthate is then dissolved in a dilute solution of caustic soda and water, and various materials are added to this solution, which is known as viscose. Reinforcing fibres are added and sometimes the dyes are added, and sometimes antibacterial agents are added, but a primary material which is added is a pore-forming solid crystal. This mass is then mixed and then is placed in the proper molds or extruded into proper form, and it is then regenerated, either by heat or by electric current, and the regenerated product is washed to remove the pore-forming materials. Sometimes it is bleached. And then the blocks are further processed. Usually they are cut to the desired size and packaged.

It was against this background that Stieg made his invention.

The theory upon which the Patent Office relies in refusing the claims in the '420 case is based upon the fact that the mesh size of the screen used by the plaintiff to select his crystals falls within the range of mesh sizes disclosed by Speijer. The crystals used to produce plaintiff's sponge pass through a 30 mesh screen, while those used by Speijer pass through a 20 mesh screen but are retained on a 50 mesh screen. Since each pore in the sponge generally is formed by a single crystal, the sponge will have more pores per unit volume in proportion as the size of the crystals become smaller. Thus, the Patent Office asserts that the number of pores per unit volume of plaintiff's sponge is within the range of the possible pore sizes disclosed by Speijer.

The plaintiff countered this theory of the Patent Office by asserting that the maximum number of crystals of the size disclosed by Speijer which in fact may be compacted into a cubic inch is 148,877. From this the plaintiff reasons that the maximum number of *pores* possible in a cubic inch of Speijer's sponge is less than 150,000. Comparing this to his excess of 500,000 pores per cubic inch, plaintiff asserts that Speijer's sponge is not sufficient to meet the terms of his claims.

To this the defendant responds by arguing that a person ordinarily skilled in the art would be led by the range of Speijer's screen mesh sizes to use a 30 mesh screen (which yields the crystal size used by the plaintiff) *exclusively* if it were desired to produce pores as small as those claimed.

The theory of the Patent Office in refusing the claims of the '848 case is based upon the fact that the plaintiff does not specify in his claims the duration of each step in his two-step heating process. This process is described by the plaintiff as consisting of a first heat application at a temperature in the range of 55°C to 75°C which has the effect of forming a "substantially immobile homogeneous gel-like mass"; and a second heat application at a temperature at least 10°C higher than the first, which has the effect of achieving the "complete regeneration of the cellulose of the viscose solution to form the sponge". The Patent Office contends that the process of Speijer cor-

:responds to this process because Speijer heats his mass *gradually* from room temperature to a temperature of 100°C. It is argued that Speijer's mass would *inherently* pass through both temperature ranges claimed by the plaintiff as it rose from its original temperature to that of 100°C.

In response to this argument by the Patent Office, the plaintiff pointed to a passage in Speijer's application which indicated that Speijer preferred to heat the mass so that the outside of the mass would attain a "certain degree of solidity as soon as possible". From this the plaintiff argued that Speijer would lead a person skilled in the art *away* from the concept of using plaintiff's first heating step because that step's purpose is to obtain a "homogeneous gel-like mass". The plaintiff concludes his remarks on this point by arguing that Speijer *cannot* achieve a "gel-like mass" in his process if the outside surface of Speijer's product is to be solid while the center is semi-fluid.

After thoroughly considering these arguments, The Court finds itself unable to agree completely with defendant's interpretation of the Speijer patent. Plaintiff's showing that the Speijer crystals, by virtue of their size, are not capable of producing a sponge having 500,000 pores per cubic inch was difficult for the Patent Office to challenge. Only by reference to Speijer's statements that the pore size may be varied by varying the crystal size, was the Patent Office able to meet this showing at all.

A presumption of validity of course attaches to Patent Office decisions, and so the Court customarily defers in close cases to the expert judgment of the Patent Office tribunals. Hence, even though the Court feels the matter might have been decided differently in the first instance as to the "obviousness" of using crystal sizes which are not disclosed directly in the reference, the Court cannot say there is no basis whatever in the patent for finding that use of such crystals would be suggested. The language referred to above shows that Speijer was aware of the relation between port size and crystal size.

In the '848 case, however, there is combined with the 500,000 pores per cubic inch a recitation of two separate heating steps. The Court can find no basis whatever for holding that the totality of this subject matter would have been obvious from the teachings of Speijer. Contrary to the allegations of the Patent Office as to the language of Speijer's Claim 2, the Court finds that this reference cannot reasonably be interpreted to embrace more than one heating step. Throughout his specification, Speijer refers to his arrangements for heating the viscose mass directly up to 100°C. Nowhere does he indicate that any other heating arrangement is contemplated. In fact, Speijer would seem to prefer to reach 100°C rather quickly, in order to give the outside of the mass "solidity as soon as possible". This is directly contrary to the express limitations of the plaintiff's claims, which set forth two distinct and separate steps, and further include a description of the character of the viscose material during the time at which each step is being carried out.

The practical advantage of combining this two-step heating process with crystals of a smaller size was shown at trial to have produced a sponge which is remarkably superior to those made according to the prior art. The evidence revealed that the plaintiff's sponge is stronger, more absorbent, and more resistent to water loss than sponges made according to the process of Speijer. These improvements in physical properties can leave no doubt that the method and materials specified in the claims of the '848 case produce a result beyond the ken of the prior art.

Accordingly, the Court finds for the defendant and against the plaintiff as to the '420 application, and will order that Civil Action No. 2533–63 be dismissed. The Court finds for the plaintiff and against the defendant, however, in Civil Action No. 2534–63, and will authorize the Commissioner of Patents to grant a

patent containing Claims 2, 3, 4, 6, 8, 12 and 13 of application Serial No. 803,848.

The above Opinion contains Findings of Fact and Conclusions of Law.